**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

CA 08 136 ML

| | | |
|---|---|---|
| **PAULA BILLYARD** | : | |
| ***Plaintiff,*** | : | |
| **vs.** | : | **Civil Action No:** |
| | : | |
| **DAVOL INC. and C. R. BARD INC.** | : | |
| ***Defendants.*** | : | |

**COMPLAINT**

COMES NOW, PLAINTIFF PAULA BILLYARD ("Plaintiff" or "Ms. Billyard") and hereby files this *Original Complaint* complaining of DAVOL INC. and C.R. BARD INC. (hereinafter collectively referred to as "Defendants"), and for cause of action would respectfully show unto the Court as follows:

## I. PARTIES

1. Plaintiff is an individual and is a citizen and resident of El Paso County, Texas.

2. Defendant DAVOL INC. ("DAVOL") is a corporation that is incorporated under the laws of the State of Rhode Island. DAVOL has its principal place of business in the State of Rhode Island. It manufactures the Kugel Mesh Patch ("Kugel Patch") and is located at 100 Sockanosset Crossroad, Cranston, Rhode Island. DAVOL has a registered agent in Rhode Island at CT Corporation System, 10 Weybosset St., Providence, Rhode Island. DAVOL focuses its business on products in key surgical specialties, including hernia repair, hemostasis, orthopedics, and laparoscopy.

3. Defendant C. R. BARD INC. ("BARD") is a corporation that is incorporated under the laws of the State of New Jersey. It is the corporate parent/stockholder of DAVOL and participates in the manufacture and distribution of the

Kugel Patch. It also manufactures and supplies DAVOL with material that forms part of the Kugel Patch. BARD at all times relevant did substantial and continuous business in the State of Rhode Island.

## II. JURISDICTION

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the case is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. This Court has authority to grant declaratory, injunctive, and monetary relief pursuant to 28 U.S.C. §§ 1343, 2201, and 2202, and to award costs and attorneys' fees under 28 U.S.C. § 2412.

6. This Court has personal jurisdiction over Defendants because they are either incorporated in Rhode Island or, at all times relevant, conducted substantial and continuous business in the State of Rhode Island designing, manufacturing, and/or distributing the defective product that is the subject of this action.

## III. FACTS

7. The Kugel Patch is used to repair ventral hernias, or hernias of the abdominal region. The Kugel Patch is made of two layers of polypropylene mesh that surround a flexible plastic ring. The surgeon places the mesh patch in a small incision. The surgeon folds the patch and places it at the site of the hernia. The released ring is then designed to spring back into its original shape, flattening the patch. The mesh material serves as a substrate, allowing the hernia patient's own tissue to grow and assist in healing the hernia.

8. The Kugel Patch was designed and is manufactured and distributed by BARD and their subsidiary, DAVOL, who owns the patent on the device that was inserted into Ms. Billyard's body.

9. DAVOL's Composix Kugel Patch consists of 1) a "memory recoil ring" component, 2) a layer of ePTFE and 3) a layer of polypropylene mesh.

10. No later than September 2004, Defendants uncovered serious problems with the weld process involving the "memory recoil ring." Despite attempts to correct the problem at the plant, BARD and DAVOL found the corrective measures to be ineffective and the process still not in control. Upon information and belief, these weld issues existed from the time the patches were originally placed on the market and all current lots suffered from this dangerous defect. This information was intentionally withheld from Ms. Billyard, Ms. Billyard's physicians, the FDA, and all other individuals who had been implanted or would be implanted with a product using the memory recoil ring.

11. During the spring and summer period of 2005, there was a substantial increase in the number of complaints with the Composix Kugel Patch. Defendants' corporate executives were notified and thus made aware of these complaints. Nevertheless, in spite of their knowledge of increasing complaints and complications, DAVOL and BARD waited until August 30, 2005 to initiate a partial Composix Kugel Patch manufacturing hold, and it was not until December 8, 2005 that the Defendants finally commenced a distribution hold. (Defendants have since admitted that these product quality hold and release procedures were not applied on a timely basis.) Furthermore, Defendants actively and intentionally chose not to immediately inform Ms. Billyard, Ms. Billyard's physicians, the Federal Drug Administration ("FDA"), and all

other individuals who had been implanted or would be implanted with a patch containing the memory recoil ring of the numerous complaints and complications they were on notice of, nor of the holds in effect.

12. On December 22, 2005, DAVOL recalled many sizes of Composix Kugel Patches under a Class I recall notice. An FDA Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to the health of the patients implanted with the devices. The Composix Kugel Patch was recalled due to a faulty "memory recoil ring" that can break under pressure. Incidents of ring migration, intestinal fistulae, bowel perforation and even death have been reported. Plaintiff was given no notice of the recall even though the Kugel Patch implanted in her body contained the "memory recoil ring".

13. On March 24, 2006, the initial Class I recall of the Composix Kugel Patch was expanded to include additional types and lot numbers.

14. On January 10, 2007, the initial Class I recall of the Composix Kugel Patch was further expanded to include the large sized Composix Kugel Patch (oval and circle) due to additional reports of memory recoil ring breakage and potential for breakage of the memory recoil ring.

15. On January 28, 2008, Chief U.S. District Judge Lisi, overseeing the Kugel Mesh Hernia Patch Products Liability Litigation (MDL-1842), clarified by order that the scope of MDL-1842 encompassed alleged defects associated with additional Davol/Bard hernia repair products, including the Kugel Patch used for the Ms. Billyard's hernia repair.

16. The Kugel Patch manufactured and distributed by Davol, contains two of the three components that make up the Composix Kugel Hernia Patch: 1) a "memory recoil ring" component and 2) layers of polypropylene mesh.

17. On May 24, 2001, Ms. Billyard underwent a laparoscopic ventral incisional hernia repair surgery at St. Catherine of Siena Medical Center in Smithtown, New York. Ms. Billyard's hernia was repaired with a medium oval Kugel Patch (Product Code No. 0010105).

18. The Kugel Patch implanted in Ms. Billyard was designed, manufactured, sold and distributed by Defendants to be used by surgeons for ventral hernia repair surgeries and was further represented by Defendants to be an appropriate, cost-effective and suitable product for such purpose.

19. At the time of her operation, Ms. Billyard was not informed of, and had no knowledge of, the complaints, known complications and risks associated with the Kugel Patch.

20. A malfunction of this device can lead to bowel perforations and/or chronic intestinal fistulae (abdominal connections or passageways between the intestines and other organs).

21. In the recall notices, DAVOL lists symptoms that could be associated with product failure such as unexplained or persistent abdominal pain, fever, tenderness at the implant site or other unusual symptoms in the recall notice.

22. In the recall, DAVOL lists conditions that could be associated with product failure, including bowel obstruction, perforation or fistula, abdominal wall pain or infection, palpable abdominal wall mass, migration or movement of the ring to the abdominal wall, perineum or intra-abdominal organs.

23. The products affected by the recall were distributed to customers worldwide.

24. The Kugel Patch implanted into Ms. Billyard was manufactured in the same or in a similar manner as the recalled patches. Ms. Billyard's Kugel Patch contained the same or similar "memory recoil ring," and the same or similar polypropylene mesh. Plaintiff suffered symptoms and injuries consistent with the symptoms and injuries described by the recall information as suffered by the other individuals affected by the defective Kugel Patches.

25. Plaintiff was never informed by Defendants of the defective, dangerous, and recalled nature of the Kugel Patch and memory recoil ring which had been implanted until well after discovering BARD's and DAVOL's FDA recall of the Composix Kugel Patch.

26. Neither Plaintiff nor Plaintiff's physicians were aware of the defective and dangerous condition of the Kugel Patch or that this unreasonably defective condition was the cause of Plaintiff's injuries until some time after BARD and DAVOL chose to finally inform the general public of the defective nature of the Composix Kugel Patch and its "memory recoil ring".

27. On or about November 29, 2005, Ms. Billyard presented to the emergency room with complaints of abdominal pain and tenderness. She was found to have an abdominal wall abscess.

28. On or about November 30, 2005, Ms. Billyard underwent an incision and drainage of the wound abscess. He stated that "there was what appeared to be healthy granulation tissue overlying the area of patient's previous mesh placement." She was sent to the recovery room in good condition and was discharged on an antibiotic.

29. In or around November of 2007, Ms. Billyard presented to her physicians with complaints of abdominal pain in the region of her previous abscess.

30. In or around November of 2007, Ms. Billyard was first informed that she was implanted with a Kugel Patch.

31. In or around November of 2007, Ms. Billyard was first informed that presence of the Kugel Patch in her body could be the cause of her injuries.

32. Ms. Billyard has suffered and will continue to suffer physical pain and mental anguish.

33. Ms. Billyard has also incurred substantial medical bills and has suffered loss of other monies due to the defective Kugel Patch that was implanted in her body.

34. DAVOL and BARD withdrew a large number of the Composix Kugel Patches as a result of the high complication and failure rate of the memory recoil ring, which is of the same or similar materials and construction as Ms. Billyard's Kugel Patch.

35. Upon information and belief DAVOL and BARD failed to comply with the FDA application and reporting requirements.

36. Upon information and belief DAVOL and BARD were aware of the high degree of complication and failure rate associated with the Kugel Patch and the memory recoil ring prior to the time the public was made aware.

37. Upon information and belief DAVOL and BARD were aware of the defect in manufacture and design of their Kugel Patch and the memory recoil ring.

38. Upon information and belief, DAVOL and BARD were aware of the defects in the manufacture and design of the memory recoil ring and chose not to issue a recall on all products containing the memory recoil ring, including the Kugel Patch implanted in the Plaintiff, in the face of the high degree of complication and failure rates

## IV. CAUSES OF ACTION

### COUNT I: NEGLIGENCE

39. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

40. Defendants DAVOL and BARD were negligent to Ms. Billyard in the following respects:

41. DAVOL and BARD at all times mentioned had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Kugel Patch.

42. DAVOL and BARD at all times mentioned knew or in the exercise of reasonable care should have known, that the Kugel Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and were unreasonably likely to injure Kugel Patch users.

43. DAVOL and BARD so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the Kugel Patch, that they were unreasonably dangerous and unsafe for the use and purpose for which it was intended.

44. DAVOL and BARD were aware of the probable consequences of the Kugel Patch. DAVOL and BARD knew or should have known the Kugel Patch would cause serious injury and they failed to disclose the known or knowable risks associated with the Kugel Patch. Furthermore, DAVOL and BARD willfully and deliberately failed

to avoid those consequences, and in doing so, DAVOL and BARD acted in conscious disregard of the safety of Ms. Billyard.

45. Defendants DAVOL and BARD owed a duty to Ms. Billyard to adequately warn her and her treating physicians of the risks of breakage, separation, tearing and splitting associated with the Kugel Patch and the resulting harm and risk it would cause patients.

46. Defendants DAVOL and BARD breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Kugel Patch.

47. As a direct and proximate result of the duties breached, the Kugel Patch used in Ms. Billyard's hernia repair surgery failed, resulting in much pain and suffering, mental anguish, doctor visits, subsequent procedures, and hefty medical bills.

48. As a direct and proximate result of DAVOL's and BARD's negligence, Ms. Billyard suffered severe pain, injuries and damages.

49. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that

amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT II: VIOLATION OF THE R.I. DECEPTIVE TRADE PRACTICES ACT

50. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs as though fully set forth herein.

51. Defendants DAVOL and BARD engaged in unfair and deceptive trading practices with Ms. Billyard in the following respects:

52. Defendants DAVOL and BARD are merchants who study, test, design, manufacture, inspect, produce, market, promote, advertise, distribute and/or sell the Kugel Patch for hernia repair surgery.

53. Defendants DAVOL and BARD knowingly committed unfair and deceptive in their study, test, design, development, manufacture, inspection, production, marketing, promotion, advertising, distribution and/or sale of the Kugel Patch for hernia repair surgery.

54. Defendants DAVOL and BARD knowingly committed unfair and deceptive trade practices when they failed to safely design and construct an effective Kugel Patch for hernia surgery.

55. Defendants DAVOL and BARD knew or reasonably should have known that Kugel Patches were at risk while they were engaging in the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or selling of the Kugel Patch for hernia repair surgery. And specifically, Defendants knew or reasonably should have known that the "memory recoil ring" posed a significant risk of breakage, separation, migration, tearing and splitting

after placement in the intra-abdominal space that posed the danger of severe harm and/or death to patients.

56. Despite their awareness of the risks posed by the Kugel Patches, Defendants DAVOL and BARD did not inform the FDA nor the general public at large prior to the December 2005 recall of its knowledge concerning the patches susceptibility to failure and the dangers posed to patients of the Kugel Patches.

57. Indeed, in violation of the R.I. Deceptive Trade Practices Act, Defendants DAVOL and BARD failed to give adequate warnings regarding the use and potential problems with such patches for hernia repair.

58. DAVOL's and BARD's actions all occurred while they were engaged in trade and commerce, and all such conduct occurred during the course of their business.

59. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge that they were failing and not performing as represented and intended showed complete indifference to or a conscious disregard for the safety of others justifies an award of additional damages for aggravating circumstances in a sum which will serve to deter DAVOL, BARD, and others from similar conduct in the future.

**Wherefore,** Plaintiff requests a judgment against DAVOL and BARD for damages in a sum permitted by statute together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT III: STRICT PRODUCT LIABILITY

60. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs as though fully set forth herein.

61. Defendants DAVOL and BARD are strictly liable to Plaintiff in the following respects:

62. DAVOL and BARD designed, manufactured, assembled, distributed, conveyed and/or sold the Kugel Patch for hernia repair surgery.

63. The Composix Kugel Patches subject to the Class I recall were defective because they failed to perform safely and effectively for the purpose they were originally designed. While the Plaintiff's Kugel Patch was not included in the Class I recall, it is included in the same product line, in that it also contains the "memory recoil ring" and polypropylene mesh as in the recalled products.

64. At all times mentioned, the Kugel Patch was substantially in the same condition as when it left the possession of DAVOL.

65. The Kugel Patch implanted into Ms. Billyard was being used in a manner reasonably anticipated at the time it was implanted in her by her surgeon.

66. Kugel Patches, like the one found in Ms. Billyard, at the time they left the possession of DAVOL and BARD were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to Ms. Billyard as follows:

i. The Kugel Patch was sold in a defective condition by design and manufacture;
ii. The Kugel Patch as designed and manufactured was unsafe to Ms. Billyard;
iii. The Kugel Patch as designed and manufactured was unreasonably dangerous to Ms. Billyard;
iv. The Kugel Patch did not perform safely as an ordinary consumer/patient, like Ms. Billyard, would expect;
v. The Kugel Patch as designed and manufactured was unsafe for its intended use;
vi. DAVOL and BARD failed to warn the end user about the dangers and risks of the product;

vii. DAVOL and BARD knew the component parts of the Kugel Patch as implemented through design and/or manufacture could cause injury to the end user;

viii. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Kugel Patch to withstand the foreseeable stresses they would be subject to within the intra-abdominal space;

ix. Failing to avoid migration of the Kugel Patch and/or its components from the initial site of the hernia repair surgery.

x. Any other acts or failures to act by DAVOL or BARD regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Kugel Patches for hernia repair surgery as will be learned during discovery.

67. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against DAVOL and BARD for damages in a sum as permitted by statute together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT IV: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

68. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs as though fully set forth herein.

69. Defendants DAVOL and BARD are liable to Ms. Billyard for the negligent infliction of emotional distress in the following respect:

70. Ms. Billyard suffered severe emotional distress, which was a result of Defendants' negligent conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or selling of the Kugel Patch for hernia repair surgery.

71. Ms. Billyard suffered severe emotional distress, which was a result of DAVOL's and BARD's negligent conduct in failing to adequately and safely design and construct an effective and safe Kugel Patch for hernia repair surgery.

72. Therefore, DAVOL and BARD are liable to Ms. Billyard.

73. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

74. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs as though fully set forth herein.

75. Defendants DAVOL and BARD are liable to Ms. Billyard for the intentional infliction of emotional distress in the following respect:

76. Ms. Billyard suffered severe emotional distress, which was a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or sale of the Kugel Patch for hernia repair surgery.

77. Ms. Billyard suffered severe emotional distress, which was a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in failing to adequately and safely design and construct an effective and safe Kugel Patch for hernia repair surgery, in complete and reckless disregard of safety to Ms. Billyard.

78. Therefore, DAVOL and BARD are liable to Ms. Billyard.

79. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT VI: BREACH OF IMPLIED WARRANTY

80. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs as though fully set forth herein.

81. Defendants DAVOL and BARD are liable to Ms. Billyard for their breach of implied warranty in the following respect:

82. DAVOL and BARD sold the Kugel Patch that was implanted in Ms. Billyard. DAVOL and BARD impliedly warranted to Ms. Billyard, her physicians and health care providers that the Kugel Patch was of merchantable quality and safe for the use for which they were intended.

83. DAVOL and BARD knew or reasonably should have known that the Kugel Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

84. Ms. Billyard, her physicians, and her health care providers reasonably relied on DAVOL's and BARD's judgment, indications and statements that the Kugel Patch was fit for such use.

85. When the Kugel Patches was distributed into the stream of commerce and sold by DAVOL and BARD, they were unsafe for their intended use, and not of merchantable quality, as warranted by DAVOL and BARD, in that they had very dangerous propensities when used as intended and implanted into a patient's body and, as a result, could cause serious injury of harm or death to the end user.

86. As a result of DAVOL and BARD's conduct and actions, Ms. Billyard suffered such injuries and damages.

87. As such, Defendants DAVOL and BARD breached the implied warranty of merchantability are liable to Ms. Billyard for her injuries and the costs he incurred as a result from using the defective Kugel Patch.

**Wherefore**, Plaintiff requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that

amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT VII: FAILURE TO WARN

88. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs as though fully set forth herein.

89. In the course of business, DAVOL and BARD designed, manufactured and sold the Kugel Patch to St. Catherine of Siena Medical Center for hernia repair surgeries.

90. In performing Ms. Billyard's hernia repair surgery, the operating physician used and inserted into Ms. Billyard one of the Kugel Patches that St. Catherine of Siena purchased from Defendants.

91. At the time of the design, manufacture and sale of the Kugel Patch, and more specifically at the time Ms. Billyard received the Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further, the Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Kugel Patch.

92. BARD and DAVOL failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the products involved significant dangers not readily obvious to the ordinary user of the Kugel Patch devices. BARD and DAVOL failed to warn of the known or knowable injuries associated with malfunction of the Kugel Patch, including but not limited to rupture of the patch and severe peritonitis and infection which would require subsequent surgical procedures and could result in severe injuries.

93. The dangerous and defective conditions in the Kugel Patches existed at the time they were delivered by the manufacturer to the distributor. At the time Ms. Billyard had her hernia repair surgery, the Kugel Patch was in the same condition as when manufactured, distributed and sold.

94. Ms. Billyard did not know at the time of use of the Kugel Patch during her surgery, nor at any time prior thereto, of the existence of the defects or dangerous propensities in the Kugel Patches.

95. Ms. Billyard suffered the aforementioned injuries and damages as a direct result of DAVOL and BARD's failure to warn.

96. As such, Defendants breached their duty to warn about known defects and are liable to Ms. Billyard for the injuries he sustained and the costs incurred as a result of using the Kugel Patch.

97. The conduct of BARD and DAVOL in continuing to market, promote, sell and distribute the Kugel Patch after obtaining knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

**Wherefore,** Plaintiff respectfully requests judgment in her favor and against DAVOL and BARD for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for her costs.

## COUNT VIII: FRAUD

98. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs as though fully set forth herein.

99. In the course of business, DAVOL and BARD designed, manufactured and sold the Kugel Patch for hernia repair surgeries.

100. At the time of the design, manufacture and sale of the Kugel Patch, and more specifically at the time Ms. Billyard received the Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further the Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Kugel Patch.

101. Defendants BARD and DAVOL were aware of the dangerous and defective condition of the products and intentionally withheld this information from Ms. Billyard, Ms. Billyard's physicians, the FDA, and the general public even though these significant dangers were not readily obvious to the ordinary user of the products, even after a post surgical complication had arisen.

102. BARD and DAVOL fraudulently represented to Ms. Billyard, Ms. Billyard's physicians, and the general public that the Kugel Patch was a safe and effective product even though they were fully aware of the dangerous and defective nature of the Kugel Patch which likely could, and would, cause injuries such as those suffered by Ms. Billyard.

103. Ms. Billyard and her physicians relied upon the fraudulent misrepresentations and concealments of Defendants and allowed for the defective Kugel Patch to be implanted.

104. As a direct and proximate result of Ms. Billyard's reliance on BARD's and DAVOL's fraudulent misrepresentations and concealments, Ms. Billyard was seriously and permanently injured.

105. The conduct of BARD and DAVOL in continuing to fraudulently market, promote, sell and distribute the Kugel Patch while fraudulently concealing knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

**Wherefore**, Plaintiff respectfully requests judgment in her favor and against DAVOL and BARD for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for her costs.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL COUNTS.**

Plaintiff, PAULA BILLYARD,
By her Attorneys,

Leah J. Donaldson

Donald A. Migliori (# 4936)
Vincent L. Greene (#5971)
Leah J. Donaldson (#7711)
MOTLEY RICE LLC
321 South Main Street
Providence, RI 02903
401.457.7700
401.457-7708 Fax

Fred Thompson, III
Rhett D. Klok
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29465
843-216-9000
843-216-9450 Fax

Teresa C. Toriseva
Nancy C.Wilkins
WEXLER TORISEVA WALLACE LLP
1446 National Road
Wheeling, WV 26003
304-238-0066
304-238-0149 Fax

Edward A. Wallace
Mark R. Miller
WEXLER TORISEVA WALLACE LLP
One North LaSalle Street, Suite 2000
Chicago, IL 60602
312-346-2222
312-346-0022 Fax